## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**MICHAEL LEROY HEGMON,**

     **Movant,**

**v.**                                 **Case No. 3:08-cv-00888**
                                          **(Criminal No. 3:06-00052)**

**UNITED STATES OF AMERICA,**

     **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's (1) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (2) Application to Proceed Without Prepayment of Fees and Costs, and (3) Amended Motion pursuant to 28 U.S.C. § 2255. (Docket Nos. 75, 77, and 85). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

### I.   Factual and Procedural Background

Movant is presently serving a term of supervised release in Ohio, which will terminate on May 19, 2013.[1] (*See* 3:06-cr-00052, Docket No. 90).

---

[1] A prisoner on supervised release is considered to be "in custody" for purposes of a § 2255 motion. *See Maleng v. Cook*, 490 U.S. 488, 491(1989); *U.S. v. Pregent*, 190 F.3d 279 (4th Cir. 1999).

On April 28, 2005, members of the Huntington Violent Crime and Drug Task Force and the Huntington Police Department made two controlled purchases of cocaine base ("crack cocaine") from the Movant through a confidential informant. (Docket No. 86 at 2).[2] Movant contends that through the informant, the agents "surreptitiously use[d] an electronic surveillance device to record matters occurring [inside his] home without first obtaining a duly aurthorized (sic) court order." (Docket No. 88 at 2). Following the purchases, the agents obtained a search warrant for Movant's residence, which they executed on May 6, 2005, recovering crack cocaine, marijuana, three handguns, and other drug trafficking paraphernalia. (Docket No. 86 at 3). Movant contends that on that date, the agents "kicked in his door" without knocking and announcing their presence, threw him on the floor, and hand-cuffed him. (Docket No. 88 at 3). He also states that he requested to see the search warrant, but it was not shown to him and that he was not present at the end of the search. (*Id.*).

On March 14, 2006, a Federal grand jury returned a three-count Indictment, Counts One and Two charging that on April 28, 2005, Movant knowingly and intentionally distributed cocaine base at approximately 9:18 p.m. and 10:30 p.m. and Count Three charging that he knowingly and intentionally possessed cocaine base with intent to distribute. (Docket No. 86 at 1-2). On May 26, 2006, Movant entered into a plea agreement with the United States, pleading guilty to Count Two of the Indictment. (*See* Case No. 3:06-cr-00052, Docket No. 32).   Prior to Movant's sentencing, the United States Probation Office prepared a pre-sentence report, recommending a base offense

---

[2] The factual background is cited from Respondent's brief and is generally uncontested by Movant with the exception of discrepancies related to the controlled purchases and the procurement and execution of the search warrant, as is noted in the analysis herein.

level of 26, in view of the quantities of drugs obtained in the two controlled purchases and recovered during the search. (*Id.*).  The probation officer recommended a two-point enhancement pursuant to United States Federal Sentencing Guidelines § 2D1.1(b)(1) because a dangerous weapon was involved and a three-point reduction for acceptance of responsibility, concluding in a total offense level of 25. (*Id.*). This offense level combined with Movant's Criminal History Category of III resulted in a range of imprisonment of 70 to 87 months under the advisory guidelines. (*Id.*).

Movant raised the following two objections to the recommendations contained in the pre-sentence report: (1) the remedial portion of *United States v. Booker*, 543 U.S. 220 (2005) was incorrect and Movant should only be sentenced for the drug amounts contained in the offense of conviction and (2) the *Almendez-Torres v. United States*, 523 U.S. 224 (1998) Sixth Amendment "exception" should not be applied because it permits judicial fact-finding relative to a Movant's criminal history. (*Id.* at 3-4).

On October 16, 2006, Movant appeared for sentencing, reiterating his objections to the pre-sentence report. (*Id.* at 4). By counsel, Movant argued (1) that he should only be sentenced based upon facts admitted to the Court and (2) the *Almendez-Torres* exception was no longer valid; therefore, Movant's criminal history should therefore be a Category I. (*Id.*).  On October 16, 2006, the District Court denied Movant's objections and sentenced him to 78 months of imprisonment, supervised release for a term of three years, a fine of $2,000.00 and a special assessment of $100.00. (*Id.* at 4 and 2). The Court entered judgment against him on October 18, 2006. (*Id.* at 4).

On October 27, 2006, Movant appealed his sentence to the United States Court of Appeals for the Fourth Circuit, contending that (1) 78 months was unreasonable because

it was greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2); (2) the District Court erred by increasing his sentence based on facts found by the Court, but not admitted by Movant in his plea agreement; and (3) the *Booker* presumption of reasonableness created a *de facto* mandatory guideline sentencing scheme. (*Id.* at 4-5). On May 29, 2007, in an unpublished opinion, the Fourth Circuit affirmed Movant's conviction and sentence. *United States v. Hegmon*, 2007 WL 1544390 (4th Cir.), *cert. denied*, 128 S. Ct. 207 (2007).

On July 2, 2008, Movant, proceeding *pro se*, filed a § 2255 Motion in this Court with a supporting memorandum and applied to proceed without prepayment of fees or costs. (Docket Nos. 75-77). On September 9, 2008, Movant filed a Motion to Amend his § 2255 Petition. (Docket No. 83). The Court granted his Motion to Amend on September 11, 2008. (Docket No. 84). The United States of America (hereinafter "Respondent") filed a Response to Movant's Motion and Amended Motion on October 14, 2008. (Docket No. 86). Movant filed a Reply to the Response on November 6, 2008. (Docket No. 88).[3]

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the undersigned has reviewed the pleadings, files and records available herein to determine the need for an evidentiary hearing. As a result of this review, the undersigned concludes that there are no disputed facts involving inconsistencies beyond the record; the legal contentions are adequately outlined by the parties; and Movant clearly is not entitled to relief. Consequently, an evidentiary

---

[3] As Movant is acting *pro se,* the pleadings he has filed in this action are held to a less stringent standard than if they had been drafted by a lawyer and will be construed liberally. *Haines v. Kerner,* 404 U.S. 519 (1972).

-4-

hearing is not warranted.[4]

## II.     **Summary of Movant's Claims**

In his original Motion, Movant raised multiple grounds all relating to the calculation of his sentence.[5] In general, he asserted that his sentence was unreasonable, because it was greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553 and that the District Court erred in calculating the sentence by relying upon facts that were not contained in the plea agreement.[6]

In his amended pleading, Movant abandoned his original claims and replaced them with a claim of ineffective assistance of counsel, pointing to several errors allegedly committed by his defense lawyer.  First, Movant argued that his lawyer failed to attack the validity of the search warrant executed at Movant's residence, which yielded evidence in the form of crack cocaine, marijuana, three handguns, and "other indicia of drug trafficking."  (Resp. Br. at 3).  According to Movant, the officers who conducted the search violated Movant's constitutional rights by not announcing their presence and by not showing him the search warrant.  He further argued that the issuance of the search warrant was improper, because it lacked a probable cause basis.

---

[4] When it is conclusive from the pleadings, files, and records that a movant is not entitled to relief, an evidentiary hearing is unnecessary.  *Raines v. United States,* 423 F.2d 326 (4th Cir. 1970); *See also United States v. Yearwood,* 863 F.2d 6 (4th Cir. 1988).

[5] Claimant also indicated that he "has studied his case and find counsel was ineffective assistance in all the grounds that are being raised in his behalf."  However, the grounds identified had little to do with his lawyer's representation.

[6] For the most part, Movant's original § 2255 Motion resurrected grounds that had been raised and rejected on direct appeal.  *See United States v. Hegmon,* 233 Fed. Appx. 288 (4th Cir. 2007), cert denied 128 S.Ct. 207 (2007).  Accordingly, those claims are procedurally barred in this action and will not be specifically addressed by the Court.  *Boeckenhaupt v. United States,* 537 F.2d 1182 (4th Cir. 1976), cert. denied 528 U.S. 1096 (1976).

Movant posited that the actions of the officers essentially constituted a "warrantless" search and seizure in violation of the Federal Rules of Criminal Procedure.[7]

Second, Movant contended that his lawyer failed to request testing on the controlled substances obtained from Movant's residence during the search and seizure. Movant asserted that testing could have determined whether the seized substances were cocaine, rock cocaine, or crack.  He argued that activities involving these different forms of cocaine are subject to different penalties under the law, and testing may have resulted in a reduction of the maximum sentence to which he was exposed.  Finally, Movant added that his sentence was miscalculated through errors made by the probation department, which his defense counsel should have identified and corrected.

## III.   <u>Standard of Review for Ineffective Assistance of Counsel Claims</u>

The relevant portion of 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Indigent criminal defendants have a constitutional right to effective assistance of counsel through direct appeal of any judgment rendered against them. *Anders v. California,* 386 U.S. 738 (1967). When a Movant charges ineffective assistance of

_____

[7] Movant has framed his attack on the legality of the search and seizure not as a direct challenge to the event, itself, but as one element that provided a basis for a motion to suppress.  Only in that light can Movant argue the alleged deprivation of his constitutional rights.  A collateral attack on the search and seizure, itself, is impermissible.  By entering a guilty plea, Movant waived his right to raise independent claims of the deprivation of constitutional rights that occurred prior to entry of the guilty plea, including claims of unlawful search and seizure based upon the Fourth Amendment.  *Tollet v. Henderson,* 411 U.S. 258 (1973).

counsel as a basis for relief under 28 U.S.C. § 2255, the burden is on the Movant to prove that his attorney failed to provide effective assistance. *Strickland v. Washington,* 466 U.S. 668, 689 (1984). In *Strickland,* the United States Supreme Court adopted a two-pronged test for evaluating whether a defendant received adequate assistance of counsel. *Id.* As the Fourth Circuit Court of Appeals indicated in *United States v. Roane,* 378 F.3d 382 (4th Cir. 1994), "[a] defendant asserting an IAC [inadequate assistance of counsel] claim must therefore satisfy both prongs, and a failure of proof on either prong ends the matter." *United States v. Roane, supra* at 406.

The first prong is competence, which is measured against the standard of reasonably effective assistance. To prove ineffective assistance of counsel, the Movant must first identify the specific acts or omissions of counsel, which were purportedly incompetent, and then demonstrate by a preponderance of the evidence that they fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington, supra* at 687-691. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Because legal services involve, to a great degree, the exercise of judgment in fluid circumstances, an evaluation of their reasonableness is inherently difficult. As such, the reviewing Court "must indulge a strong presumption" that the conduct of counsel fell within the wide range of generally accepted professional competence and that the challenged acts or omissions constitute "sound trial strategy." *Strickland v. Washington, supra* at 689, citing *Michel v. Louisiana*, 350 U.S. 91 (1955). The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of the totality of the circumstances. *Goodson v. United States,* 564

F.2d 1071, 1072 (4th Cir. 1977). The Court must be highly deferential when scrutinizing the performance of counsel, because "[t]here are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  *Strickland v. Washington, supra* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." *Strickland v. Washington, supra* at 689.

The second prong of the test is prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland v. Washington, supra* at 694, citing *United States v. Morrison*, 449 U.S. 361 (1981).  "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.  Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." *Strickland v. Washington, supra* at 694.  Because the purpose of the Sixth Amendment's guarantee of effective counsel is to insure the integrity of the proceeding, deficiencies in counsel's performance will not amount to ineffective assistance unless the performance undermines the reliability of the proceeding's outcome. The Movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington, supra* at 694; *Hill v. Lockhart,* 474 U.S. 52, 59

(1985).   An attorney's mere mistake, ignorance or inadvertence, alone, does not constitute proof of ineffective assistance. *Murray v. Carrier,* 477 U.S. 478 (1986).  The Movant must show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. *Strickland v. Washington, supra* at 687-88; *Fitzgerald v. Thompson,* 943 F.2d 463 (4th Cir. 1991), *cert. denied,* 502 U.S. 1112 (1992).  "In making the determination whether the specified errors resulted in the required prejudice, a court should presume. . . that the judge or jury acted according to the law.  An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Strickland v. Washington, supra* at 694-695.

In the context of a guilty plea, such as the one in this case, the *Strickland* standard has a slightly different application.  As explained by the Fourth Circuit Court of Appeals:

> In the context of a guilty plea, the petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Beck v. Angelone*, 261 F.3d 377, 394 (4th Cir. 2001), quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The Court added that,

> [t]he standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses open to the defendant.  In applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, granting the defendant's solemn declaration of guilt a presumption of truthfulness.  The Constitution requires the circumstances

> to reflect that the defendant was informed of all of the direct consequences of his plea.   A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him.

*Beck v. Angelone*, *supra* at 394, (internal citations omitted). Although this modification of the *Strickland* standard "focuses the inquiry on a subjective question, the answer to that question must be reached through an objective analysis." *Hooper v. Garraghty,* 845 F.2d 471 (4th Cir. 1988).

## IV.   <u>Analysis</u>

The law is well-settled that once a criminal defendant has pled guilty, collateral review through a § 2255 action is limited to an examination of whether the plea was voluntary and intelligent. *United States v. Broce,* 488 U.S. 258 (1973).   A criminal defendant may argue that his plea was not voluntary or intelligent if he was deprived of the effective assistance of counsel when entering into a plea agreement.   Of course, the purpose of making this argument generally is to be relieved of the plea and its consequences. Significantly, none of Movant's filings alleges that his guilty plea was made involuntarily or unintelligently, or that he would have refused to plead guilty if his counsel had provided effective assistance.   Instead, Movant's claims appear to center on the length of his sentence, a matter that was previously addressed on direct appeal. Accordingly, the relief sought by Movant arguably is unavailable through this § 2255 action.   Despite that, the undersigned will address the substantive merits of Movant's assertions of ineffective assistance of counsel.

### A.   **Motion to Suppress**

Movant asserts that his counsel was constitutionally ineffective for failing to seek

-10-

suppression of evidence seized during the search of Movant's home. Specifically, Movant contends that the State law enforcement officers who performed the search refused to show him a copy of the search warrant despite his repeated requests; that the officers failed to "knock and announce" the search; that the officers lacked "the probable cause of suspicion" to obtain the search warrant; and that they failed to establish the reliability of the informant whose statements provided the factual basis for the warrant. The undersigned initially notes that a counsel's decision to forgo making a motion to suppress is a tactical consideration. "An attorney's advice [on tactical or strategic matters] is presumed to be adequate unless it appears objectively unreasonable." *Burton v. United States*, 2009 WL 529841, *4 (S.D.W.Va.); s*ee Morris v. United States,* 2008 WL 4763223 (S.D.W.Va.). The undersigned has fully considered the record and the parties' arguments and concludes that the decision of defense counsel in this regard was not unreasonable.

First, Movant's argument that the officers who searched his home acted in "intentional and deliberate disregard" of Federal Rule of Criminal Procedure 41 (hereinafter "Rule 41")[8] and his citation to *U.S. v. Gantt*, 194 F.3d 987 (9th Cir. 1999) are inapposite to the facts of this case. (Docket No. 85 at 1). In *Gantt*, "the FBI executed a search warrant on Gantt's room," *Id.* at 996, whereas here, the record and Movant's own statements clearly establish that the controlled purchases and search warrant were executed through the combined efforts of the Huntington Violent Crime and Drug Task

---

[8] Rule 41(f)(1)(C) of the Federal Rules of Criminal Procedure requires an officer who has executed a search warrant to "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."

Force and the Huntington Police Department. (*See, e.g.,* Docket Nos. 86 at 2, 76 at 2. and 88 at 3). Movant does not allege that the *Federal* government was involved in any manner in obtaining or executing the search warrant. (*Id.*). Therefore, Rule 41 simply does not apply to the search warrant used at Movant's residence, which was obtained and executed by State law enforcement officers. A warrant proceeding must comply with the particulars of Rule 41 only when the application for the warrant was made at the request or on behalf of a federal officer. *See U.S. v. Clyburn,* 24 F.3d 613, 616 (4th Cir. 1994), quoting *United States v. Williams,* 977 F.2d 866 (4th Cir. 1992). "[B]y its own terms, Rule 41 applies only to federal search warrants involving 'a federal law enforcement officer.'" *U.S. v. Clyburn, supra* at 616.

Second, Movant argues that the agents violated the federal "knock and announce" statute, and no "exigent circumstances" existed upon which to justify their abandonment of the statute's mandates. (Docket No. 85 at 1-2).[9] The undersigned disagrees with this view of the facts. "It is well-established that non-compliance with the knock and announce requirements may be excused where exigent circumstances render strict compliance imprudent." *Id.*; *see, e.g., U.S. v. Lalor,* 996 F.2d 1578, 1584 (4th Cir. 1993); *U.S. v. Nabors,* 901 F.2d 1351, 1354 (6th Cir. 1990); *U.S. v. Spinelli,* 848 F.2d 26, 28 (2d Cir. 1988). The "possibility of destruction of evidence and danger to the officers are 'two of the most common and compelling bases that establish exigency.' "

---

[9] Title 18 U.S.C. § 3109 permits an officer to "break open any outer or inner door or window of a house ... to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance." Unlike Rule 41, Title 18 U.S.C. § 3109 applies to the State search of Movant's home. *U.S. v. Kennedy,* 32 F.3d 876, 882 (4th Cir. 1994), quoting *U.S. v. Singer,* 943 F.2d 758, 761 (7th Cir. 1991) ("Because this statute 'encompasses the constitutional requirements of the fourth amendment,' it not only governs federal searches by federal agents, but also provides the proper framework for analyzing the execution of state search warrants.").

*Id.*, quoting *U.S. v. Bonner,* 874 F.2d 822, 826 (D.C.Cir. 1989). Courts have held that either possibility allows officers to make a forced entry simultaneously with the knock and announcement, or without alerting the occupants at all. *Id.*; *see U.S. v. Buckley,* 4 F.3d 552, 558 (7th Cir. 1993); *Mensh v. Dyer,* 956 F.2d 36, 40 (4th Cir. 1991). Here, the alleged illegal conduct involved the distribution of controlled substances, and the search warrant was executed after a confidential informant notified members of the Huntington Drug/Vice Unit that he saw a handgun inside the residence during a controlled purchase of cocaine base. (*See* Docket No. 86-2 at 4). Consequently, the possibility of both destruction of evidence and danger to the officers existed when they executed the warrant.  Accordingly, the strategic decision of defense counsel to forgo a motion to suppress the evidence on this basis was not objectively unreasonable, as it would likely have been fruitless.

Third, Movant asserts that there was no probable cause upon which to issue the search warrant, because there was no showing that the confidential informant was reliable.[10] This position is equally unpersuasive; particularly, in view of the events that

---

[10] In his Reply to the Response of the United States, Movant raises for the first time an argument that the search warrant was invalid, because the confidential informant was wearing a recording device in the absence of a valid court order authorizing the use of the device.  Movant relies upon a West Virginia Supreme Court decision, *State v. Mullens,* 650 S.E.2d 169 (2006), which holds that the West Virginia Constitution prohibits police from sending a wired informant into a suspect's residence without first having obtained prior court approval to use the recording device.  However, this District has previously held that *Mullens* is not applicable to federal prosecutions even when state law enforcement officers conducted the controlled buys at which the recording device was used. Instead, the Fourth Amendment of the U.S. Constitution alone governs the admissibility of evidence in federal cases, and it does not prohibit such activity.  *United States v. Shaw,* 2007 WL 3480478 (S.D.W.Va.); *See also United States v. White,* 401 U.S. 745 (1971).  Evidence that is admissible under federal law will not be excluded solely because it is inadmissible under state law.  Rather, the standard applied for evaluating the admissibility of evidence in a federal proceeding is whether the actions of the state officers in obtaining the evidence complied with the Fourth Amendment. *United States v. Clyburn,* 24 F.3d. 613, 616 (4th Cir. 1994). Therefore, Movant's supplemental argument lacks merit.

triggered the application for the search warrant.  The search warrant was issued by a West Virginia Circuit Court Judge based upon the sworn affidavit of a police officer who was intimately involved in arranging and carrying out controlled purchases of illegal drugs at Movant's residence.  (Docket No. 86-2 at 3-5).  Prior to requesting the search warrant, the Huntington Drug/Vice Unit arranged these controlled purchases, which, according to the affidavit, were well-structured in their execution.  Movant does not refute that the officers investigating him used the procedures outlined in the introductory portion of the affidavit, which indicated that prior to initiating a controlled purchase, the officers searched the confidential informant for illegal drugs and currency. After ensuring that he had none in his possession, the officers sent the informant into the targeted residence outfitted with recorded U.S currency, providing instructions as to what quantity of controlled substance to purchase.  The officers wired the informant with a recording device and/or transmitter to capture the transaction and observed him entering and leaving the residence.   Upon exiting the residence, the informant immediately surrendered to the officers the substances that he had purchased and was again searched by the officers to ensure that no additional contraband remained on the informant's person. (Docket No. 86-2 at 4). In this case, the officers received tan "chunks" of a substance from the informant, which field tested positive as cocaine.  The informant confirmed that he received the cocaine from Movant in exchange for the recorded U. S. currency.   (*Id.*).

In regard to probable cause to support the issuance of a search warrant, the Fourth Amendment to the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall no be violated,

> and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." An affidavit in support of an application for a Search Warrant "must provide the [judicial officer] with a substantial basis for determining the existence of probable cause . . . ."

*Illinois v. Gates,* 462 U.S. 213, 239 (1983).  Therefore, "a mere conclusory statement that gives the [judicial officer] virtually no basis at all for making a judgment regarding probable cause" will not suffice. "Sufficient information must be presented to the [judicial officer] to allow that official to determine probable cause; his actions cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the [judicial officer's] duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Illinois v. Gates, supra* at 239. *See also United States v. Leon,* 468 U.S. 897, 914-915 (1984). "The task of the issuing [judicial officer] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judicial officer] had a 'substantial basis for conclud[ing]' that probable cause existed." *Illinois v. Gates, supra* at 238-239, quoting *Jones v. United States,* 362 U.S. 257, 271 (1960). A Court reviewing the sufficiency of a search warrant affidavit must consider the totality of the circumstances to determine whether probable cause supported the issuance of the search warrant. *United States v. Wilhelm,* 80 F.3d 116, 119 (4th Cir. 1996), citing *Illinois v. Gates, supra* at 238. "[P]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, *supra* at 232.  In this case, the Circuit Court

Judge received a sworn statement confirming that controlled substances had been purchased from Movant in the residence that was the subject of the search warrant. The reliability of the confidential informant was substantiated through the officer's adherence to the protocols of the controlled purchases, as well as the officers' eyewitness accounts of the informant's participation in the purchases. As such, the affiant in this case offered a substantial factual basis upon which to support the finding of probable cause.

Moreover, the courts in this Circuit have recognized that when there is reason to believe that a person is unlawfully dealing in controlled substances, the probability also exists that he is keeping evidence of it where he resides. *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) "[I]t is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key." *Id.* at 218. "[T]he scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *Maryland v. Garrison,* 480 U.S. 79, 84 (1987), quoting *United States v. Ross*, 456 U.S. 798, 824 (1982). "Probable cause is ultimately a matter of common sense." *United States v. Grossman, supra* at 214. Obviously, the Circuit Judge's presumption that Movant's residence likely contained evidence of illegal drug trafficking was supported by a common sense review of the events surrounding the controlled purchases. Therefore, the decision of Movant's counsel not to challenge the probable cause basis of the search warrant was not objectively unreasonable, as such a challenge likely would have been fruitless.

Even assuming, for the sake of argument, that a decision not to file a motion to suppress in this case would amount to incompetence under prevailing standards,

Movant is hard-pressed to establish the second prong of the *Strickland* test; that being, prejudice. Indeed, the probable cause basis for the search warrant was sound. Furthermore, the officers had evidence of illegal activity that was separate from and preceded issuance of the search warrant. As such, the likelihood that Movant would have refused the plea agreement is not sufficiently probable to undermine confidence in the result. Moreover, according to the records on file in Movant's criminal proceeding, the filing of pre-trial motions would not have been considered untimely until June 20, 2006. (See Case No. 3:06-cr-00052, Docket No. 27). Movant pled guilty to Count Two of the Indictment and signed a plea agreement on May 26, 2006, more than three weeks before the filing deadline expired. (*Id.*, Docket No. 32). Movant has never contended, nor is there any reason to believe, that prior to entry of the guilty plea, defense counsel fully considered and definitively rejected the need to file a motion to suppress. Accordingly, Movant's contention that defense counsel erroneously failed to file a motion to suppress is premature.

### B.    Pre-trial Testing of Evidence

Movant's next allegation of ineffective assistance of counsel involves his lawyer's failure to request pre-trial testing of substances obtained during the search to determine whether they consisted of "cocaine," "rock cocaine," or "crack." According to Movant, the lack of testing potentially led to an increase in his maximum sentence, because the sentence range varied depending upon the form and amounts of cocaine at issue. (Docket No. 85 at 1-2). Respondent counters by emphasizing that "on April 10, 2006, the United States, through discovery, provident Movant's counsel with a copy of the forensic report prepared by the West Virginia State Police indentifying both the drugs

and the specific amounts of the same." (Docket No. 86 at 8). Therefore, contrary to Movant's intimation that the substances obtained from his residence were never formally tested, their nature and precise quantities were scientifically established and made part of the record.   Movant does not suggest that the testing completed by the West Virginia State Police was erroneous or unreliable; therefore, counsel's failure to re-test the substances was not unreasonable.

As previously noted, Movant pled guilty to the charge contained in Count Two of the Indictment. (3:06-cr-0052, Docket No. 32).  In the plea agreement, Count Two was described as a violation of 21 U.S.C. § 841(a)(1) "distribution of cocaine base, also known as 'crack.'"  *Id.*  The agreement expressly forewarned Movant that his guilty plea could result in a maximum penalty of imprisonment for a period of twenty years and further notified him that the ultimate determination of the sentence was within the sole discretion of the Court.  *Id.*  After entering into the agreement, Movant participated in a Rule 11 hearing in which the following occurred:  Movant was found competent by the Court to proceed; Movant's counsel summarized the plea agreement; the Court read the charges contained in Count Two of the Indictment and the pertinent portions of 21 U.S.C. § 841(a)(1); Movant explained why he considered himself guilty of Count Two; the United States presented a proffer of what it would be able to prove at trial; the Court found that there was sufficient factual basis for the plea, that it was voluntary, and that Movant understood the nature of the charge, the consequences of pleading guilty, and the constitutional and other legal rights being forfeited; and the Court accepted Movant's plea. (3:06-cr-00052, Docket No. 30).

Generally, a voluntary guilty plea acts as a complete admission of the material elements of the crime which is charged and, therefore, constitutes an admission of factual guilt. *McCarthy v. United States,* 394 U.S. 459, 466 (1969). The Fourth Circuit Court of Appeals has explained, "a guilty plea constitutes a waiver of all non-jurisdictional defects . . . including 'the right to contest the factual merits of the charges.'" *United States v. Willis,* 992 F.2d 489, 490 (4th Cir. 1993), quoting *United States v. Freed,* 688 F.2d 24, 25 (6th Cir. 1982). Likewise, the sworn admissions and statements of the defendant made at the plea hearing "carry a presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). The record in this case reflects that Movant's guilty plea was voluntary and made with full knowledge of its potential consequences. In fact, Movant has never challenged this point. By signing the agreement and conceding in court that he was guilty of Court Two, Movant expressly admitted to the distribution of crack cocaine. He does not claim that his plea was not a voluntary or intelligent one.[11] Furthermore, he does not contend that he would have refused the plea agreement if additional testing had proven the substances to be a form of cocaine other than crack. In fact, he does not deny that the substances retrieved from his residence were crack cocaine.[12] Once again, Movant fails to demonstrate that any

---

[11] If, in fact, Movant does claim that his guilty plea was not voluntary and intelligent, because the cocaine had not been conclusively identified as crack cocaine or was not accurately weighed, this claim has been procedurally defaulted as a result of his failure to raise it on direct appeal. *Bousley  v. United States,* 523 U.S. 614, 621 (1998)("voluntariness and intelligence of guilty plea can be attacked on collateral review only if first challenged on direct review.")

[12] Movant complains that the indictment failed to specify the quantity of cocaine he allegedly distributed. However, by pleading guilty, Movant waived any right he had to attack the adequacy of the indictment. *United States v. Willis, supra.*

prejudicial consequence flowed from the failure of defense counsel to re-test the substances.

### C.    Challenges to Sentence

Movant's final claim of ineffective assistance of counsel concerns the calculation of his sentence. Movant contends that his counsel was deficient in not objecting to what Movant perceives as the probation department's incorrect calculation of his offense level and criminal history. (*Id.* at 2-3).  Movant argues that under the United States Federal Sentencing Guidelines, his offense level should have been "18" based on the quantity of drugs charged in Count Two of the Indictment, but the "probation department" incorrectly calculated his offense level as "26." (Docket No. 85 at 2). He suggests that when the other Counts charged in the Indictment were "dropped or dismissed," that they "should not have been added" into the calculation. (*Id.*).  Movant further asserts that the probation department incorrectly calculated his Criminal History Category by adding points for his three prior misdemeanor convictions for possession of a controlled substance that occurred in 2004 and 2005, when he should not have received points for these offenses because the charges did not exceed one year. (*Id.* at 3). According to Movant, these mistakes should have been identified and addressed by his counsel, and the failure to do so constituted ineffective assistance.

As Respondent aptly notes, Movant has challenged the calculation of his sentence on two occasions prior to this one. (*See* Docket No. 86 at 8-10). At sentencing, he argued that the remedial portion of the opinion in *U.S. v. Booker*, 543 U.S. 220 (2005) was incorrect and that he should only be sentenced for the drug amounts contained in Count Two of the Indictment, the only offense for which he pled guilty and was convicted.

(3:06-cr-00052 at Docket No. 47). Movant also objected to application of the *Almendez-Torres* exception to the Sixth Amendment to the extent that it permitted judicial fact-finding relative to Movant's criminal history.   However, the District Court overruled these objections. (*Id.*). Movant unsuccessfully argued to the Fourth Circuit on direct appeal that the District Court erred in calculating his sentence by attributing to him a quantity of drugs and possession of a firearm that were not admitted as part of his guilty plea.   Movant also contended that his sentence was greater than necessary to comply with the sentencing guidelines. (*Id.* at Docket No. 57).    Both of these positions were rejected by the appellate court. Thus, Movant's counsel zealously represented him on the issue of his sentencing before both the District Court and Court of Appeals.[13] Ultimately, Movant received a sentence of 78 months (later reduced to 64 months), which was substantially less than the twenty year maximum sentence authorized by the facts established in his guilty plea.[14]   Movant makes no allegation that he would have rejected the plea agreement if he knew in advance that the Court would use a base offense level of "26" and a Criminal History Category of III. Given the evidence that a confidential informant made two controlled purchases of cocaine from Movant, it is unlikely that Movant would have rejected the plea agreement even if he was fully aware at the time he signed the agreement that the Court would impose a 78 month sentence. Accordingly, Movant's claim of ineffective assistance of counsel in this regard is entirely

[13] In addition to his appeal, Movant made a Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) which resulted in a reduction of the Offense Level from 25 to 23  and a corresponding reduction of his  sentence from 78 months to 64 months.  (See Case No. 3:06-cr-00052, Docket No. 74).

[14] Absent a jury determination as to drug weight, a defendant may still be sentenced to the maximum term for violation of 21 U.S.C. § 841(a), twenty years imprisonment.  *United States v. Reid,* 523 F.3d 310 (4th Cir. 2008).

frivolous.

Moreover, as a general rule, 28 U.S.C. § 2255 does not allow an individual to recast, under the guise of collateral attack, questions fully considered on direct appeal. *Boeckenhaupt v. U.S.,* 537 F.2d 1182, 1183 (4th Cir. 1976).  Similarly, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. *Bousley v. United States,* 523 U.S. 614, 621 (1998)("Claims that could have been, but were not, raised on direct appeal are procedurally defaulted and generally not cognizable in habeas review. Th[e] court may consider the claim despite procedural default, however, if the petitioner demonstrates cause and prejudice or actual innocence."); *See also Stone v. Powell,* 428 U.S. 465 (1976).  Furthermore, Movant is unable to challenge his sentence calculation pursuant to any exception to these general rules.  The sentence calculation has been fully considered on appeal; there has been no intervening change of law relative to this issue; Movant cannot demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack; and he does not demonstrate cause and prejudice or claim actual innocence. Therefore, to the extent that Movant is again challenging the calculation, he is barred from doing so under the pretext of a 28 U.S.C. § 2255 action.

In regard to Movant's criminal history, his counsel also was not objectively unreasonable in accepting the calculation of Movant's Criminal History Category, nor was Movant prejudiced by this decision. Article 18 U.S.C. § 4A1.2(c) provides: "Sentences for misdemeanor and petty offenses are counted," except that certain enumerated offenses and offenses similar to them are included only if "the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty

days" or if "the prior offense was similar to an instant offense."[15] 18 U.S.C. § 4A1.2(c)(1). Also, certain enumerated offenses are never included in the calculation.[16] 18 U.S.C. § 4A1.2(c)(2). Movant's prior misdemeanor offenses of possession of a controlled substance are not among, nor do they resemble, the offenses excepted from inclusion, none of which involve controlled substances in any form. Therefore, Movant's counsel had no ground to object to the probation department's calculation on this basis and, accordingly, as stated by Respondent, counsel was not constitutionally ineffective for failing "to pursue a frivolous objection." (Docket No. 86 at 10).

Based upon the above, the undersigned proposes that the presiding District Judge **FIND** that Movant's counsel was not constitutionally ineffective in his representation of defendant.

## V.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the proposed findings and **RECOMMENDS** as follows:

1. Movant's Motion and Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Nos. 75 and 85) be **DISMISSED with prejudice**; and

2. Movant's application to proceed without prepayment of fees or costs (Docket No. 1) be **DENIED**.

---

[15] The offenses include careless/reckless driving; contempt of court; disorderly conduct/disturbing the peace; driving without a license or with a suspended/revoked license; providing false information to, hindering, or failing to obey a police officer; bouncing a check; leaving the scene of an accident; non-support; prostitution; resisting arrest; or trespassing. 18 U.S.C. § 4A1.2(c)(1).

[16] The offenses include fish and game violations, hitchhiking, juvenile status offenses and truancy, local ordinance violations (except those violations that are also violations under state criminal law), loitering, minor traffic infractions (e.g., speeding), public intoxication, and vagrancy. 18 U.S.C. § 4A1.2(c)(2).

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, the respondent, and any counsel of record.

**FILED:** February 18, 2011.

Cheryl A. Eifert
United States Magistrate Judge

-24-